IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-HC-2108-FL

| | | |
|---|---|---|
| JOHN MARION HUFF, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ERIK A. HOOKS, et al., | ) | |
| | ) | |
| Respondent.[1] | ) | |

Petitioner, proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court on respondent's motion for summary judgment (DE 12). Petitioner did not respond to the motion. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants respondent's motion.

## BACKGROUND

Petitioner, a state inmate incarcerated at Nash Correctional Institution, entered a no contest plea in Craven County, North Carolina Superior Court on August 25, 2015, to a single count of second-degree murder, and was sentenced to 219 to 272 months imprisonment. (Resp't's App. (DE 14) Exs. 1, 2). The offense occurred on or about October 14, 2011. (Id. Ex. 2). Petitioner did not appeal his conviction or sentence.

---

[1] Petitioner has named "State of North Carolina" as respondent in this action. (See Pet. (DE 1) at 1). The custodian of the correctional facility in which petitioner is incarcerated is the proper respondent in an action filed pursuant to 28 U.S.C. § 2254. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Respondent represents that Erik A. Hooks ("Hooks"), the Secretary of the North Carolina Department of Public Safety, and other unidentified parties designated "et al." are the proper respondents in this action. (See Mot. Summ. J. (DE 12) at 1). The court has constructively amended the case caption to reflect that "Erik A. Hooks et al." are respondents in this action, and the clerk of court is DIRECTED to so amend the caption on the docket.

On August 17, 2016, petitioner signed certificate of service and mailed for filing a pro se motion for appropriate relief ("MAR") to the Craven County Superior Court. (Id. Ex. 7 at 20). The state court summarily denied petitioner's MAR on March 30, 2017. (Id. Ex. 8). On April 21, 2017, petitioner filed pro se certiorari petition with the North Carolina Court of Appeals, seeking appellate review of the claims in the MAR. (Id. Ex. 12 at 1). On May 12, 2017, the North Carolina Court of Appeals summarily denied the certiorari petition. (Id. Ex. 14).

Petitioner signed the instant habeas petition on May 28, 2017, alleging the following claims for relief: 1) petitioner's counsel failed to provide him with copies of his discovery; 2) petitioner's medical safekeeping order requiring transfer to Department of Public Safety custody was not followed; 3) petitioner's judgment and commitment order contained the incorrect file number; 4) petitioner's counsel coerced him into pleading no contest by explaining he faced potential sentence of 481 months imprisonment if he did not accept the proposed plea agreement; 5) petitioner's counsel coerced him into pleading no contest by stating he would receive medical treatment if he entered the plea; and 6) petitioner's plea was involuntary because he did not receive medical treatment while awaiting trial in the Craven County Jail and because he was suffering from pneumonia on the date he entered his plea. (Pet. (DE 12) ¶ 12; Pet'r's Aff. (DE 3) ¶ 6). Petitioner asserted these claims pursuant to either the Due Process Clause of the Fourteenth Amendment or the Sixth Amendment right to effective assistance of counsel. (Pet. (DE 12) ¶ 12; Pet'r's Aff. (DE 3) ¶ 6).

On February 13, 2018, respondent filed the instant motion for summary judgment, arguing that petitioner is not entitled to habeas relief. The following day, the court sent petitioner notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), explaining respondent's summary

judgment motion had been filed, the deadline for responding, and the potential consequences of failing to respond. (Roseboro Notice (DE 16)). Despite this notice, petitioner did not respond to the motion. On April 23, 2018, petitioner filed motion for records to be subpoenaed, which the court denied.

**DISCUSSION**

A.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in state court, is set forth in 28 U.S.C. § 2254(d). The statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to

that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

B.  Analysis

   1.  Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of several dates:

> A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> B) the date on which the impediment to filing an application . . . is removed . . .;
> C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The one-year statute of limitations is tolled, however, during the time "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2).

The statutory period began to run in this case on the date petitioner's judgment became final. As noted, petitioner received a sentence of 219 to 272 months imprisonment following his no contest plea to second-degree murder, a class B2 felony under North Carolina's structured sentencing scheme. (Resp't's App. (DE 14) Ex. 2); N.C. Gen. Stat. §14-17 (2011) (providing second-degree murder was punishable as a B2 felony under version of structured sentencing applicable to petitioner's October 14, 2011 offense). Because petitioner pleaded no contest and his minimum sentencing term fell within the presumptive range for a class B2 felony, at prior record level V, petitioner had no right to appeal his conviction or sentence. See N.C. Gen. Stat. § 15A-1444(a1), (e) (defendant has no right to appeal if he enters no contest plea, does not move to withdraw the plea before sentencing, and the minimum sentence of imprisonment is within the presumptive range); N.C. Gen. Stat. § 15A-1340.17(c) (2011) (establishing presumptive range of 219 to 273 months imprisonment for a class B2 felony, prior record level V, under version of structured sentencing applicable to petitioner's 2011 offense). Where a defendant does not have a right to direct appellate

review of a conviction or sentence, the judgment becomes final on the date the sentence is imposed.[2] 28 U.S.C. § 2244(d)(1)(A) (providing judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review") (emphasis added); Gonzalez v. Thaler, 565 U.S. 134, 154 (2012) ("[W]ith respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time for seeking such review expires . . . ."); Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004) (concluding petitioner's North Carolina criminal judgment became final on the date it was imposed where petitioner had no right to appeal).

Petitioner's one-year statute of limitations thus began to run on August 25, 2015, the date his sentence was imposed. The statute of limitations then ran for 358 days, until August 17, 2016, when he signed the certificate of service for his state MAR. (Resp't's App. (DE 14) Ex. 7 at 20); Houston v. Lack, 487 U.S. 266, 270 (1988) (prisoner motions are "filed" on the date prisoner delivers the motion to prison officials for mailing). Petitioner's decision to wait 358 days before filing his state MAR left him with only 7 additional days, after conclusion of state collateral review, to file his federal habeas petition. See 28 U.S.C. § 2244(d)(1)(A), d(2). As noted, the state trial court denied petitioner's MAR on March 30, 3017, and petitioner then filed a petition for writ of

---

[2] Petitioner could have filed a petition for writ of certiorari with the North Carolina Court of Appeals, seeking discretionary review of his conviction and sentence. N.C. Gen. Stat. § 15A-1444(a1), (e). A petition for discretionary review of an otherwise non-appealable conviction or sentence, however, is not part of the direct appellate review process in North Carolina. See id. (defendant cannot appeal a conviction or sentence "as a matter of right" if the defendant pleaded no contest, did not file a motion to withdraw the plea before sentencing, and the minimum term of imprisonment is within the presumptive range); N.C. R. App. P. 21(a) (providing writ of certiorari to the North Carolina Court of Appeals is an "extraordinary writ" that should only be granted in "appropriate" circumstances); State v. Niccum, 293 N.C. 276, 278-79 (1977) (distinguishing petitions for certiorari of non-appealable decisions and direct appellate review); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 601 (M.D.N.C. 2004) (concluding "N.C. R. App. P. 21(a) petitions for certiorari in North Carolina are not a part of the direct review process referred to in AEDPA, nor are they to be used to determine the finality of convictions and the beginning of the one-year limitations period under 28 U.S.C. § 2244(d)(1)"), appeal dismissed, 145 F. App'x 444 (4th Cir. 2005) (per curiam).

certiorari seeking appellate review of that decision. The North Carolina Court of Appeals denied the petition on May 12, 2017. (Resp't's App. (DE 14) Ex. 14). Under § 2244(d)(2), the statute of limitations was therefore tolled from August 17, 2016, until May 12, 2017. Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (holding only the time period petitioner "spent pursuing state post-conviction relief is excluded from the one year limitation period" under § 2244(d)(2)). Petitioner's one-year statute of limitations then began to run again on May 13, 2017, and expired on Monday, May 22, 2017, the first business day after 7 days from May 13, 2017.[3] Petitioner signed the instant petition May 28, 2017, at least six days beyond the one-year statute of limitations. See 28 U.S.C. § 2244(d)(1)(A).

Additionally, petitioner does not qualify for any of the alternative statutes of limitations set forth in § 2244(d)(1)(A). Petitioner does not allege that his claims are based on a new rule of constitutional law made retroactive to cases on collateral review, or that the factual predicate of the claims could not have been discovered through the exercise of ordinary diligence until after his conviction became final. See id. (d)(1)(C)-(D). Additionally, petitioner has presented no evidence suggesting a state impediment prevented him from filing earlier.[4] Id. (d)(1)(B).

Petitioner also is not entitled to equitable tolling of the statute of limitations. Although the purpose of the AEDPA is to "reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism," the Fourth Circuit

---

[3]Seven days are added to May 13, 2017, because the statute ran for 358 days before petitioner filed his MAR, and 365 - 358 = 7.

[4]The court notes petitioner filed a motion in state court requesting stenographic transcripts on February 24, 2016, which the state court denied on March 7, 2014. (Resp't's App. (DE 14) Ex. 4). A request for stenographic transcripts, however, does not toll the statute of limitations under § 2244(d)(1)(B) or equitable tolling principles. See Lloyd v. Van Natta, 296 F.3d 630, 633-34 (7th Cir. 2002); Hodge v. Greiner, 269 F.3d 104, 107 (2d Cir. 2001).

has held that "the AEDPA statute of limitations is subject to equitable tolling." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Equitable tolling only is "appropriate when . . . extraordinary circumstances beyond [the petitioner's] control prevented him from [complying with the statutory time limit]." Id. (citation and quotations omitted). Petitioner has failed to allege any grounds for equitable tolling. Additionally, petitioner did not respond to respondent's motion for summary judgment (in which respondent specifically asserted a statute of limitations defense and explained the doctrine of equitable tolling), and thus has failed to present any competent evidence suggesting he is entitled to equitable tolling. Matsushita, 475 U.S. at 587 (party resisting a motion for summary judgment must set forth specific facts showing there is a genuine issue for trial where moving party has met its burden under Rule 56).

Although petitioner fails to argue this point, the court notes that the time period between the date the North Carolina Court of Appeals denied his MAR and the date petitioner received the decision in the mail is not equitably tolled. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). This is because petitioner decided to wait until only a few days before the AEDPA statute of limitations expired before filing the MAR, and thus allowed himself only a few days after the state appellate court dismissed his petition for discretionary review of the MAR to timely file his federal habeas petition. In such circumstances, "the ordinary time that it takes to deliver the mail can[not] be regarded as a circumstance external to a party's own conduct within the contemplation of the equitable tolling doctrine." Id. (quotation and alterations omitted). Based upon the foregoing, the petition is time barred, and petitioner is not entitled to equitable tolling.

2. Petitioner's Claims Fail on the Merits

Even assuming petitioner's claims were not barred by the statute of limitations, his claims fail on the merits. Petitioner's primary claims for relief are that his plea was involuntary because his counsel stated he could be sentenced to 481 months imprisonment if he did not accept the plea offer, his counsel promised he would receive medical treatment if he entered the no contest plea, and his medical issues and inability to obtain medical treatment at the Craven County Jail rendered the plea involuntary. Plaintiff thus appears to allege claims for violations of his Sixth Amendment right to effective assistance of counsel and a Fourteenth Amendment due process claim that his plea was involuntary.

To state a claim for ineffective assistance of counsel in the context of a plea agreement, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. Id. at 688. The court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. For the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The voluntariness of a "plea can be determined only by considering all of the relevant circumstances surrounding it." Brady v. United States, 397 U.S. 742, 749 (1970). A plea is made knowingly and voluntarily if the defendant is fully aware of the direct consequences of the plea and

9

the plea was not "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business . . . ." Id. at 755. Where a defendant pleads no contest, however, and affirms under oath in open court that the plea was voluntary, the defendant "is bound by [such] representation[]" in the absence of "clear and convincing evidence to the contrary . . . ." Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Thus, "in the absence of extraordinary circumstances, allegations in a [habeas] petition that directly contradict the petitioner's sworn statements made during a properly conducted [plea] colloquy are always 'palpably incredible' and 'patently frivolous or false'" and therefore do not entitle a petitioner to an evidentiary hearing. See United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (quoting Blackledge, 431 U.S. at 76) (internal citations omitted).

  Here, petitioner's allegations are belied by the sworn affirmations he made in open court at his plea hearing. Petitioner testified at his plea hearing that he discussed his case fully with his lawyer, and that his lawyer explained the nature of the charges, each element of the offense, as well as possible defenses. (See Resp't's App. (DE 14) Ex. 1 at 2). Petitioner testified that he was satisfied with his attorney's services, and that he was entering his plea of his own free will without any undue outside influence. (Id. at 2, 4). He also testified that no person made any promises or threatened him in any way to cause him to enter the plea against his wishes. (Id. at 4). Petitioner further testified that he has a General High School Equivalency Diploma ("GED"), and he was not under the influence of alcohol, drugs, narcotics, medicines, pills, or any other substances at the time he entered the plea. (Id. at 2). Petitioner agreed that "there are facts to support your plea." (Id. at

4). Petitioner also testified that the terms of the plea agreement set forth in the written transcript of plea were "correct as being [petitioner's] full plea agreement." (Id. at 4).

In exchange for petitioner's no contest plea, the prosecutor agreed to recommend a sentence in the presumptive range for a class B2 felony (219 to 273 months) and dismiss petitioner's charges of obtaining property by false pretenses, financial card theft, habitual felon, and being a felon in possession of a firearm. (Id. at 4-5). After listening to petitioner's responses to the plea colloquy in open court and observing petitioner's demeanor, the trial court judge found as a fact that petitioner was competent to stand trial, that petitioner was satisfied with his lawyer's services, and that the plea was made freely, voluntarily and understandingly. (Id. at 5). Petitioner was sentenced to 219 to 272 months imprisonment, pursuant to the terms of the plea agreement. (Resp't's App. (DE 14) Ex. 2).

Based on the foregoing, petitioner testified at his plea hearing that he was not coerced into pleading no contest by his lawyer or anyone else, that he not was pleading guilty solely to obtain better medical treatment, and that his plea was the product solely of his own "free will" and informed, rational choice. Petitioner's claims in the instant petition thus directly contradict the sworn statements petitioner made during his plea colloquy. Petitioner also has not presented evidence of extraordinary circumstances that would justify disregarding the sworn statements made at his plea colloquy. See Lemaster, 403 F.3d at 222-23 (allegations in habeas petition that counsel did not fully explain the plea agreement, misinformed petitioner about the sentence, and threatened he would not receive medical care unless he pleaded guilty insufficient standing alone to justify setting aside collateral attack waiver in plea agreement where allegations were directly contradicted by sworn statements at plea colloquy); see also Lasiter v. Thomas, 89 F.3d 699, 702-03 (10th Cir.

11

1996) ("[The petitioner] [i]s bound by his solemn declarations in open court and his unsubstantiated efforts to refute that record [a]re not sufficient to require a hearing.") (internal quotation omitted). Accordingly, the state court decision denying petitioner's claims that his plea was involuntary was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner also cannot establish he received ineffective assistance of counsel prior to pleading no contest. Petitioner's sole allegations regarding ineffective assistance of counsel are that counsel failed to provide copies of the discovery in his case, and that counsel misadvised him that he was facing 481 months imprisonment if he did not accept the plea agreement. Petitioner's conclusory claims that counsel failed to provide discovery and that he would not have pleaded no contest if he was provided such discovery are belied by the transcript of plea, in which petitioner stated under oath he was satisfied with his counsel's services and that he had discussed the case fully with counsel. See Blackledge, 431 U.S. at 73-74 (petitioner not entitled to habeas relief on the basis of unsubstantiated allegations contradicted by sworn statements at his plea colloquy).

As to counsel's alleged misadvice about the term of imprisonment that petitioner may receive if he rejected the plea agreement and insisted on going to trial, such claim is wholly conclusory and thus fails to establish counsel provided constitutionally deficient performance, or that petitioner was prejudiced by counsel's performance. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), overruling on other grounds recognized by, Yeatts v. Angelone, 166 F.3d 255 (1999). Moreover, petitioner's transcript of plea indicates his maximum potential sentence on all counts was 481 months, and petitioner has provided no evidence suggesting that such calculation was erroneous.

(Resp't's App. (DE 14) Ex. 1 at 2). Counsel, of course, cannot be ineffective where he provides <u>correct</u> advice about the maximum sentence.

Petitioner also alleges he received a "safekeeping" order requiring transport to a state prison to treat his medical conditions, but he was not transferred as required. Assuming such a claim is cognizable on federal habeas review, it is barred in these circumstances by petitioner's subsequent no contest plea. See <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). To the extent this allegation is intended to support the claim that petitioner's medical issues rendered the plea involuntary, the claim is rejected for the reasons stated above – petitioner was found competent to plead no contest to the charges and he swore in open court his plea was made knowingly and voluntarily.

Petitioner also alleges the case number on his criminal judgment is inaccurate, and thus the judgment is invalid. Even assuming the number is inaccurate, such ministerial errors are not cognizable on federal habeas review. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Additionally, the case number on the criminal judgment does not appear to be incorrect. Petitioner suggests the number should be 11CRS55108, whereas the judgment uses the number 11CRS055108. (Resp't's App. (DE 14) Ex. 2). The "0" before the 55108, however, is meaningless because it is the first digit of the number. For example, there is no meaningful difference between "055" and "55."

3.   Additional Claims

Petitioner's habeas petition also alleges a number of additional grounds for relief, such as the search of his home violated the Fourth Amendment, petitioner's counsel had a conflict of

interest, and other conclusory allegations. These unsupported claims do not entitle petitioner to habeas relief. Nickerson, 971 F.2d at 1136 ("In order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit.").

Based on the foregoing, the state court's order denying relief on petitioner's claims was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner therefore is not entitled to habeas relief.

B.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, "the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " Buck v. Davis,137 S. Ct. 759, 773 (2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003)); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a

14

constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE 12) is GRANTED. A certificate of appealability is DENIED. The clerk of court is DIRECTED to close this case, and to amend the caption on the docket as set forth in footnote one above.

SO ORDERED, this the 7th day of September, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge